IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cr-30067 |
| | ) | |
| **LEONARD COMMON,** | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Leonard Common's Amended Motion for Compassionate Release (d/e 47) pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i). For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

On October 5, 2018, Defendant pled guilty to one count of possession with the intent to distribute more than 5 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and one count of possession of a firearm in furtherance of a federal drug trafficking crime in violation of 18 U.S.C. § 924(c). Minute Entry, Oct. 5, 2018; Indictment d/e 1. On February 4, 2019, the

undersigned District Judge sentenced Defendant to the mandatory minimum term of 120 months' imprisonment, consisting of 60 months' imprisonment on each count to be served consecutively to each other. Minute Entry, Feb. 4, 2019. Defendant was also sentenced to four year terms of supervised release on each count, to be served concurrently with each other. Id. Defendant is currently serving his sentence at FCI Forrest City Low, in Forrest City, Arkansas, and has a projected release date of April 5, 2026. Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed June 22, 2020).

On June 9, 2020, Defendant filed a pro se motion for compassionate release (d/e 44) pursuant to 18 U.S.C. § 3582(c)(1)(A). On June 15, 2020, following the appointment of the Federal Public Defender's Office to represent Defendant, an Amended Motion for Compassionate Release (d/e 47) was filed. Defendant requests compassionate release due to his health issues and the COVID-19 pandemic. Defendant also requests that the Court waive the exhaustion requirement found at 18 U.S.C. § 3582(c)(1)(A). Defendant is 39 years old and has been diagnosed with severe chronic asthma. See Mot. Compassionate Release 2.

Defendant also has a history of hypertension and has been diagnosed with obesity. Id.; Probation's Mem. 2, d/e 53.

Defendant proposes to live with his mother if he is released from custody. The United States Probation Office addressed Defendant's request for compassionate release in a Memorandum (d/e 53). In the Memorandum, the Probation Office conluded that the proposed residence is an acceptable living situation for Defendant. Probation's Mem. 2. The Probation Office also noted that Defendant has not had any disciplinary history while in the custody of the Bureau of Prisons. Id. at 1. According to the Probation Office, Defendant submitted a request for compassionate release to the Warden of his facility on May 20, 2020, which was denied on June 3, 2020. Id.

On June 18, 2020, the Government filed a Response Opposing Defendant's Motion for Compassionate Release (d/e 51). The Government argues that the Court should deny Defendant's amended motion based on his failure to exhaust administrative remedies and in light of his criminal history. Resp. 2. The Government also notes that the Bureau of Prisons (BOP) has implemented procedures designed to curb the spread of the virus in

its facilities.  See id. at 6-10.

On June 22, 2020, the Court held a videoconference hearing on Defendant's amended motion.  As of that date, BOP reported that FCI Forrest City Low has 148 confirmed inmate cases of COVID-19 and one confirmed staff member case.  See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (accessed June 22, 2020).  At the hearing, the Court heard arguments from counsel, testimony from a staff member at FCI Forrest City Low, and a statement from Defendant.  During the hearing, Defendant could be heard coughing and clearing phlegm from his throat and he complained of difficulties caused by his asthma.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed.  See 18 U.S.C. § 3582(c).  However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met.  See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief.  With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting thirty days from when the inmate made his or her request, whichever is earlier.  The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Defendant submitted a request for compassionate release to the Warden of FCI Forrest City Low on May 20, 2020.  Resp. 5; Probation's Mem. 1.  On June 3, 2020, the Warden of FCI Forrest City Low denied Defendant's request for compassionate release.  See Resp. 5; Probation's Mem. 1.  Because more than 30 days have passed since Defendant submitted his request for compassionate release to the Warden of FCI Forrest City Low, exhaustion of administrative remedies is not an issue in this case.  See 18 U.S.C. § 3582(c)(1)(A).

As Defendant's motion is properly before the Court, the next issue is whether Defendant is eligible for compassionate release.  For Defendant to be eligible for compassionate release, the Court, after considering the relevant factors set forth at 18 U.S.C. § 3553(a), must determine that "extraordinary and compelling reasons" warrant a reduction in Defendant's term of imprisonment and that the reduction is "consistent with applicable policy

statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

1. <u>Extraordinary and Compelling Reasons for Release</u>

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation. Socially distancing can be difficult for individuals living or working in a prison.

Defendant is a 39-year-old African American man who is five feet nine inches tall and (at the time of the preparation of the PSR) weighed 240 pounds, which is considered to be obese. <u>See</u> PSR ¶ 52. Defendant also has a history of hypertension. Probation's Mem. 2. Defendant has suffered from severe asthma since he was a child. PSR ¶ 53. Defendant's asthma has resulted in numerous hospitalizations. <u>Id.</u> On two occasions, Defendant was admitted to the intensive care unit as a result of complications from his asthma alone, and during one five-day hospitalization, Defendant's breathing difficulties were so severe that he had to be resuscitated

after a Code Blue.  Am. Mot. Compassionate Release 24.

The CDC has identified asthma as a comorbidity that increases the likelihood of serious risk from COVID-19.  See Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last accessed June 22, 2020) ("Patients in China with no reported underlying medical conditions had an overall case fatality of 0.9%, but case fatality was higher for patients with comorbidities: 10.5% for those with cardiovascular disease, 7.3% for diabetes, and approximately 6% each for chronic respiratory disease, hypertension, and cancer."); Scparta, 2020 WL 1910481, *9.

The Court begins with the factors set out in 18 U.S.C. § 3553(a).  Defendant is currently serving a 120-month term of imprisonment for this offense.  Defendant has been detained since his arrest for this offense on January 3, 2018.  According to BOP records, Defendant is scheduled to be released on April 5, 2026.  While in the custody of BOP, Defendant has not had any disciplinary violations.  See Probation's Mem. 1.  Defendant has

completed a drug education program and is enrolled in GED preparation classes. Id. The Probation Office has also concluded that Defendant's proposed residence upon release is an acceptable living situation. Id. The Court has considered the factors in § 3553(a) and concludes that they entitle Defendant to compassionate release.

    2.    Sentencing Commission Policy Statements

The relevant policy statement, § 1B1.13 of the Sentencing Guidelines, explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that "(1)(A) extraordinary and compelling reasons warrant the reduction; . . . (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13 (2018).

The commentary to § 1B1.13 provides certain circumstances constituting "extraordinary and compelling reasons" that warrant a

sentence reduction.[1]  U.S.S.G. § 1B1.13 cmt. n.1.  One of the circumstances is where a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).  Another circumstance is where "an extraordinary and compelling reason other than, or in combination with," the listed circumstances is present. U.S.S.G. § 1B1.13 cmt. n.1(D).  As discussed above, in this case, Defendant has serious underlying physical and medical conditions which are present in combination with the extraordinary and compelling reason presented by the COVID-19 pandemic.

In this case, Defendant has already contracted COVID-19 once.  On Friday, April 24, 2020, the World Health Organization (WHO) issued a scientific brief saying that the public belief that a one-time infection leads to immunity remains unproven and is

---

[1] The Court notes that § 1B1.13 of the Sentencing Guidelines has not been amended to reflect all of the additional language added to 18 U.S.C. § 3582(c)(1)(A).  As it stands, § 1B1.13 only refers to a reduction "upon the motion of the Director of the Bureau of Prisons," which is not the situation here.  No sentencing policy provides guidance for when a defendant files a motion.  Nevertheless, the Court still considers § 1B1.13.

unreliable as a basis for response to the pandemic. See WHO, "Immunity Passports" in the Context of COVID-19, https://www.who.int/news-room/commentaries/detail/immunity-passports-in-the-context-of-covid-19 (last accessed June 22, 2020). Specifically, the WHO says that "[t]here is currently no evidence that people who have recovered from COVID-19 and have antibodies are protected from a second infection." Id. The risk of reinfection is not merely theoretical. An example of the risk of reinfection can be found in the case of the USS Theodore Roosevelt. Recently thirteen United States sailors from that ship who had apparently recovered from the coronavirus, went through rigorous recovery criteria that exceeded CDC guidelines, and had received negative test results, tested positive for the disease a second time. New research by the Columbia University Mailman School of Public Health has found that "reinfections with endemic coronaviruses are not uncommon, even within a year of prior infection." Risk of Coronavirus Reinfection Remains After Recovery, available at https://www.publichealth.columbia.edu/public-health-now/news/risk-coronavirus-reinfection-remains-after-recovery. While that study covered four endemic coronaviruses—not

including SARS-CoV-2, the virus that causes COVID-19— the study found that when reinfection occurred, it was not associated with less severe symptoms. Id.  Given the large number of confirmed cases of COVID-19 at FCI Forrest City Low and based on the currently available scientific data, Defendant continues to be at risk of imminent harm based on his underlying medical conditions.

In addition to the very real risk of relapse or reinfection, Defendant also may suffer side effects from COVID-19.  The available science and preliminary evidence, as well as historical research on other coronaviruses like severe acute respiratory syndrome (SARS) and Middle East respiratory syndrome (MERS), suggests that for some people affected by COVID-19, a full recovery may not happen for years, if at all.  See, e.g., Madjid et al., Potential Effects of Coronaviruses on the Cardiovascular System: A Review, available at https://jamanetwork.com/journals/jamacardiology/fullarticle/2763846?guestAccessKey=150724fb-8146-4fc2-a60c-b78955728d41&utm_source=For_The_Media&utm_medium=referral&utm_campaign=ftm_links&utm_content=tfl&utm_term=032720 (suggesting that COVID-19 may cause lingering cardiac damage, as

well as making existing cardiovascular problems worse, further increasing the risk for heart attack and stroke).  Other studies from China indicate that permanent lung damage can be found in anywhere from 77 to 95 percent of COVID-19 survivors.  Wang et al., Temporal Changes of CT Findings in 90 Patients with COVID-19 Pneumonia: A Longitudinal Study, available at https://pubs.rsna.org/doi/full/10.1148/radiol.2020200843.  For someone like Defendant, who has been diagnosed with asthma severe enough to cause multiple hospitalizations, the possibility of reinfection presents a very real and immediate danger.

The Court also considers whether Defendant is a danger to the safety of any other person or to the community.  See U.S.S.G. § 1B1.13.  If Defendant quarantines himself at his residence and practices social distancing, that will diminish the risk of spreading the virus.  Otherwise, the Court does not find that Defendant poses a danger to the community.

Therefore, the Court finds that Defendant has satisfied all requirements for compassionate release.

### III. CONCLUSION

For the reasons set forth above, Defendant Leonard Common's Amended Motion for Compassionate Release (d/e 47) is GRANTED. The Court hereby reduces Defendant's term of imprisonment in this case from 120 months to time served. The Court modifies Defendant's conditions of supervised release to require Defendant to spend 6 months in home confinement, with the first 14 days to be spent in isolation. The home confinement shall start as soon as possible after his term of supervised release begins. During his term of home confinement, Defendant shall be monitored by telephone until such time as it is practicable to implement electronic monitoring. All other aspects of Defendant's sentence shall remain the same.

Defendant's pro se motion for compassionate release (d/e 44), is DENIED AS MOOT.

The Bureau of Prisons is ORDERED to immediately re-test Defendant for COVID-19. The Bureau of Prisons is ORDERED to release Defendant within 24 hours of a negative test for COVID-19. The Clerk is DIRECTED to send a copy of this Opinion to FCI Forrest City Low. Defendant must self-quarantine for a period of 14

days beginning at the time of his release, including while he travels from FCI Forrest City Low to his residence. Defendant shall travel to Quincy, Illinois, in a vehicle with three-row seating that allows him to follow the CDC's social distancing guidelines, which include staying at least six feet from others and wearing a face mask and gloves.

ENTER: June 22, 2020

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE